[No. 24426.   Department Two.   August 15, 1933.]

MARION McDONNELL, *Respondent*, v. LOCAL UNION No. 81 OF AMALGAMATED MEAT CUTTERS & BUTCHER WORKERS OF NORTH AMERICA, *Appellant*.[1]

*Vanderveer & Bassett,* for appellant.
*John F. Dore,* for respondent.

MAIN, J.—This action was brought to recover a death benefit of one thousand dollars which the plaintiff claimed to be due her for the death of her father, a former member of the defendant union.  The cause was tried to the court without a jury, and resulted in findings of fact from which it was concluded that the plaintiff was entitled to recover.  Judgment was en-

[1]Reported in 24 P. (2d) 447.

tered against the defendant for the amount claimed, and it appeals.

There is no dispute as to the facts, and, as found by the trial court, they may be summarized as follows: The Amalgamated Meat Cutters & Butcher Workers of North America is a voluntary association, and Local Union No. 81 is a member of the national organization. The membership in the national is composed of the members of the local. Both organizations were at all times engaged in insuring their members against sickness, disability and death. The constitution and by-laws of the organization provide that, upon the death of a member in good standing, two hundred dollars should be paid by the national and one thousand dollars by the local organization to the beneficiary of any member in good standing at the time of his death. Members were in good standing who had timely paid their dues for six months immediately preceding death.

May 27, 1926, Thomas McDonnell, the father of the respondent, became a member of the local union No. 81. December 17, 1928, he died. Prior to his death he had designated the respondent as his beneficiary under his membership certificate. Promptly upon the death of her father, the respondent informed the secretary and treasurer of the local union of his death, and was then informed that her father was in arrears in his dues, and for that reason she was not entitled to any death benefit; but that, in view of the fact that the local union had paid the national organization the per capita tax due from the respondent's father, if she would pay the local union the amount of his delinquent dues, he, the secretary and treasurer, would endeavor to secure the death benefit from the national organization and would take up a subscription from the members of the local union for her benefit.

Following this conversation, the respondent paid the

local union the amount of the delinquent dues and the payment thereof was recorded in her passbook. The secretary and treasurer thereupon secured from the national organization the sum of two hundred dollars, and paid the same to the respondent as a death benefit. He also took up a subscription for her benefit among the members of the local union in the sum of approximately two hundred dollars, which was paid to her.

The local union made a certificate to the national organization to the effect that Thomas McDonnell was dead, and that he was entitled to the insurance benefits of the organization. The local union had paid the per capita tax due to the national organization each month for McDonnell, and the money received from the respondent was paid into the local treasury to reimburse it for the per capita tax paid to the national organization, and also for monthly dues and premiums owing to the local. No part of the money paid by the respondent was returned to her by either the local or the national organization. The local union refused to pay the one thousand dollars, and the present action resulted.

This action is against the local union, and the question is whether that union, by accepting the dues and premiums from the respondent after the death of her father, waived its right to declare that there had been a forfeiture of the right to any benefits by reason of McDonnell's failure to pay the dues and premiums during his lifetime.

The rule is that a certificate of a fraternal insurance organization which becomes suspended and absolutely null and void under the terms of the contract may be reinstated if the facts which render the certificate null and void under the terms of the contract are known to the collecting officer of the local camp who collects subsequent dues and assessments

that are transmitted and retained by the home office. This is upon the theory that the knowledge of the local collecting officer is imputed to the national organization, and if that officer collects and receipts for dues with knowledge of facts which work a forfeiture of the right to any benefit, that forfeiture will be waived. *Schuster v. Knights & Ladies of Security,* 60 Wash. 42, 110 Pac. 680; *Shultice v. Modern Woodmen of America,* 67 Wash. 65, 120 Pac. 531; *Peterson v. Modern Woodmen of America,* 127 Wash. 412, 220 Pac. 809.

It is true that in none of the cases cited were the dues which were delinquent paid and accepted after the death of the member; but there is no reason why a waiver may not occur after, as well as before, the death of the person whose life was insured. 45 C. J. 160; *Supreme Tribe of Ben Hur v. Hall,* 24 Ind. App. 316, 56 N. E. 780, 79 Am. St. 362; *Stiefel v. Amalgamated S. M. W. L. U. No. 73,* 208 Ill. App. 121; *Erdmann v. Mut. Ins. Co. of the Order of Herman's Sons of Wisconsin,* 44 Wis. 376; *Masonic Mutual Benefit Association v. Beck,* 77 Ind. 203, 40 Am. Rep. 295. If, as the cases hold, knowledge of facts by the local officer, which work a forfeiture under the charter or by-laws of the association, is imputed to the national organization when that officer collects and accepts dues, and the collection of such dues waives the right to declare a forfeiture, it would necessarily follow that his acts would be equally binding upon the local organization of which he was an officer.

In the case now before us, as already indicated, the action is against the local union. The dues and assessments were accepted by the secretary and treasurer of that organization after the death of McDonnell with full knowledge that, prior to his death, he had been delinquent in the payment of dues and assessments for several months. The acceptance of dues and

assessments was a waiver of the right to forfeit the benefit resulting from a membership in the organization, unless the fact that the secretary and treasurer, at the time he accepted them, stated that he would, in addition to getting the two hundred dollars from the national organization, take up a subscription for the respondent among members of the local union, prevented such waiver.

When the secretary accepted the dues, the organization of which he was a member became legally bound to pay the respondent the one thousand dollars. The fact that he volunteered to take up a subscription would not destroy the legal effect of his acts in accepting the dues after the death of the member. When he accepted the dues, he was acting as the agent of the union, but in taking up the subscription he was acting individually. This court has long adhered to the view that it will not permit an insurance company, whether it be an old line company or a fraternal organization, to change the fundamental law of agency by contract, and thus exonerate itself from liability for the acts of those who are in fact and law its agents.

In *Shultice v. Modern Woodmen of America,* 67 Wash. 65, 120 Pac. 531, *supra,* it was said:

"This court has consistently and steadfastly adhered to the view that it will not permit an insurance company, whether it be an old line company or a fraternal organization, to change the fundamental law of agency by contract, and thus exonerate itself from liability for the acts of those who are in fact and law its agents. [Citing authorities.]"

Whether the appellant, after certifying to the national organization that McDonnell was in good standing at the time of his death, when in fact he was not, and collecting from that organization for the beneficiary the sum of two hundred dollars, can now say that it is not also liable, it is not necessary here to de-

termine, even though it was so held under a similar state of facts in one of the cases cited.

The cases of *Rantin v. Fraternal Aid Union,* 105 Kan. 687, 185 Pac. 729, and *Supreme Tribe of Ben Hur v. Miller,* 122 Ill. App. 489, are each upon materially different facts, but there is language in each of them that is out of harmony with the doctrine of the cases above cited which represent the majority rule, and, as we view it, announce the better doctrine.

The judgment will be affirmed.

BEALS, C. J., TOLMAN, STEINERT, and BLAKE, JJ., concur.